IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| NATALIE L.,[1] <br><br> Plaintiff, <br> v. <br><br> KILOLO KIJAKAZI, <br> Acting Commissioner of Social Security, <br><br> Defendant. | REPORT AND RECOMMENDATION <br><br> Case No. 2:20-cv-180 DBB DBP <br><br> Judge David Barlow <br><br> Chief Magistrate Judge Dustin B. Pead |

Plaintiff seeks judicial review of the decision of the Commissioner denying her claim for disability and disability insurance benefits under Title II of the Social Security Act.[2] After careful review of the record, the parties' briefs, and relevant case law, the court finds the Commissioner's decision is supported by substantial evidence and legally sound. The undersigned therefore recommends that the decision of the Commissioner be affirmed.

## BACKGROUND

In June 2017, Plaintiff protective filed an application for disability and disability insurance benefits, alleging disability beginning August 18, 2014, due to multiple sclerosis (MS), depression, and anxiety. (Tr. 247, 278.) Plaintiff completed high school and had past relevant work as a warehouse worker, data entry clerk, and reception clerk. (Tr. 29.)

After her application was denied initially, she sought a hearing before an Administrative Law Judge (ALJ). The ALJ followed the agency's five-step sequential evaluation process in

---

[1] Based on privacy concerns regarding sensitive personal information, the court does not use Plaintiff's last name. Privacy concerns are inherent in many of the Federal Rules. See Fed. R. App. P. 25(a)(5); Fed. R. Civ. P. 5.2; Fed. R. Crim. 49.1.

[2] This case is referred to the undersigned from Judge David Barlow based upon 28 U.S.C. § 636(b)(1)(B). (ECF No. 38.)

determining whether Plaintiff was disabled.[3] At step two, the ALJ found Plaintiff has the severe impairments of MS, degenerative disc disease of the cervical spine, migraines, depressive disorder, anxiety disorder, and a sleep disorder. The ALJ found that Plaintiff's severe impairments would limit her to less than a full range of light work, including work that only required simple work related judgments and decisions with only short and simple instructions that were easy to understand, remember, and carry out. (Tr. 25.) Based on this residual functional capacity (RFC), the ALJ found that Plaintiff could not perform any past relevant work. She could, however, preform other jobs that existing in significant numbers in the national economy. Based on the testimony of a vocational expert, representative occupations include clerical assistant and router clerk. Thus, Plaintiff was not disabled. The agency's Appeals Council denied Plaintiff's subsequent request for review, making the ALJ's decision final for purposes of judicial review. *See* 20 C.F.R. § 404.918; *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir.2003). Plaintiff asserts two primary errors that the court addresses below.

## STANDARD OF REVIEW

This court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007) (quotations and citation omitted). "Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence

---

[3] *See* 20 CFR 404.1520(a) (describing the five-step evaluation process); *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009) (describing the five-step framework the Social Security Administration uses to determine disability).

2

as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." *Lax*, 489 F.3d at 1084 (quotations and citation omitted). As noted by the Supreme Court, "an ALJ's factual findings … 'shall be conclusive' if supported by 'substantial evidence.'" *Biestek*, 139 S.Ct. at 1153 (quoting 42 U.S.C. § 405(g)). "In reviewing the ALJ's decision, [this court may] neither reweigh the evidence nor substitute [its] judgment for that of the [ALJ]." *Madrid v. Barnhart*, 447 F.3d 788, 790 (10th Cir. 2006) (quotations and citation omitted). "The failure to apply the correct legal standard or to provide this court with a sufficient basis to determine that appropriate legal principles have been followed [are] grounds for reversal." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (quotations and citation omitted).

## DISCUSSION

Plaintiff raises two sources of error. First, the ALJ adopted the State Agency Psychologists' findings, yet, the RFC failed to include Plaintiff's mental limitations. This allegedly violated the agency's Program Operations Manual System or POMS. The POMS are a "set of policies issued by the Administration to be used in processing claims." *McNamar v. Apfel*, 172 F.3d 764, 766 (10th Cir. 1999). Lastly, Plaintiff takes issue with the ALJ's failure to account for absenteeism from her migraines.

### I. The ALJ's RFC is supported by the record and no legal error was committed.

Plaintiff challenges the ALJ's evaluation of her mental RFC, arguing that the ALJ did not "adequately account for [her] limitations in concentration, persistence, or pace (CPP)." (ECF No. 34 p. 10.) The ALJ found moderate limitations as to CPP. The ALJ provided:

3

> The state agency psychological consultants considering the claimant's case have consistently found that the claimant suffers from moderate limitation in the ability to concentrate, persist, and maintain pace but no more than mild psychological limitations in other areas (exhibit lA, 3A, 6A, 8A). I find these opinions to be persuasive because they are consistent with the findings of Dr. Hardy. (Tr. 28.)

The state agency psychologists Dr. Huebner and Dr. Macnamara reviewed the record and opined that Plaintiff would have moderate limitations in CPP. (Tr. 111, 128.) The other state agency psychologists, Dr. Johnson and Dr. Raps also found moderate limitations. The problem according to Plaintiff with these evaluations, which were relied on by the ALJ, is with the narrative portions that did not comply with the POMS requirements.

During the disability review process, a medical consultant, a doctor who is an expert in evaluating claims for disability benefits, may be used. The doctor considers the evidentiary record to make findings concerning a claimant's RFC. POMS §§ DI 24501.001(B)(2). To record the RFC assessment, a doctor utilizes the Mental RFC Form (MRFCA). POMS DI §§ 24510.005(B)(2); 24510.061(A). The POMS explains that in order "[t]o assure a comprehensive assessment of mental RFC, the [MRFCA form] requires the [doctor] to first record preliminary conclusions about the effect of the impairment(s) on each of four general areas of mental function [in Section I,] then to prepare a narrative statement of mental RFC [in Section III]." POMS § DI 24510.061(A) (emphases omitted). For example, a claimant is "'Moderately Limited' when the evidence supports the conclusion that the individual's capacity to perform the activity is impaired." POMS § DI 24510.063(B) (emphases omitted). When the doctor finds a claimant moderately limited in a certain area, "[t]he degree and extent of the capacity or limitation must be described in a narrative format in Section III." POMS § DI 24510.063(B)(2) (emphases omitted). "Section III is for recording the formal narrative mental RFC assessment and provides for the [doctor] to prepare a narrative statement for each of the subsections (A

through D) in section I." POMS § DI 24510.065(A), see (B). Or stated differently, the doctor must incorporate all of his Section I findings into his Section III narrative RFC assessment.

Here, Plaintiff argues this was not done and the ALJ's failure to "either encapsulate the three noted limitations—limitations in attention and concentration for two-hour segments, maintaining attendance, and completing a normal workday or workweek and maintaining a work pace—or articulate why such limitations were not merited requires remand." (ECF No. 34 p. 15.) Yet, despite the reported differences and alleged failures in the forms, the Tenth Circuit has found that an ALJ can adequately address a disability claimant's marked moderate section I limitations via a work limitation. This is evident in *Smith v. Colvin*, 821 F.3d 1264 (10th Cir. 2016).

In Smith, the claimant argued the ALJ failed to address moderate limitations from section I of the MRFCA. The state agency psychologist found moderate limitations in nine areas, yet the ALJ did not expressly incorporate all the moderate limitation in the assessment of the residual functional capacity. The ALJ, however, limited the claimant's RFC to no contact with the general public and specified that the claimant "could engage in only simple, repetitive, and routine tasks." *Smith*, 821 F.3d at 1269. The Tenth Circuit found that based on these findings, "the administrative law judge incorporated the functional limitations of [the claimant's] moderate nonexertional impairments." *Id.* Such an approach, the Tenth Circuit, noted is "acceptable in our circuit, for we have held in a published opinion that an administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity." *Id.*

Here the ALJ incorporated Plaintiff's mental limitations by limiting Plaintiff to simple work-related judgments, with only short and simple instructions that were easy to understand,

5

remember, and carry out. Such a limited RFC, the court finds, comports with incorporating the moderate limitations in section I of the MRFCA and follows Tenth Circuit precedent. *See Smith,* 821 F.3d 1264; *Vigil v. Colvin,* 805 F.3d 1199, 1204 (10th Cir.2015) ("[T]he [administrative law judge] accounted for [the claimant's] moderate concentration, persistence, and pace problems in his [assessment of residual functional capacity] by limiting [the claimant] to unskilled work."); *Lee v. Colvin,* 631 Fed.Appx. 538 (10th Cir.2015) (unpublished). Based on this reasoning the court rejects Plaintiff's assertion of error. The court has considered Plaintiff's cited cases and finds them unpersuasive on the instant facts.

**II.     The evidence fails to demonstrate any error concerning the ALJ's analysis of Plaintiff's migraines.**

At step two, the ALJ found Plaintiff's migraines to be a severe impairment. Plaintiff argues the ALJ erred by not including additional limitations in the RFC to account for alleged absenteeism arising from her migraine headaches. In the decision, the ALJ noted that Plaintiff suffered from migraine headaches, "but Botox treatment is very effective in controlling her symptoms. She can go more than twenty to twenty five days without significant migraines." (Tr. 27.) Plaintiff extrapolates a hypothetical year from the ALJ's statement alleging that she would have migraine headaches more than fourteen times per year. (ECF No. 39 p. 12.) Plaintiff presumes ten of those will occur on a workday equating to ten absences per year. This, in turn, would preclude employment. Thus, according to Plaintiff, the ALJ should have inquired about the tolerances of absences due to her migraines. The medical record belies Plaintiff's position.

In January 2015, Plaintiff reported that she experienced fewer than five migraines since 2000. At a follow up appointment Plaintiff was assessed with vestibular migraines,

but she did not describe much difficulty with them over the next few years at doctor appointments or consultative examinations. In December 2017, however, things began to take a turn for the worse. Plaintiff reported chronic daily headaches, "occurring every day of the month, lasting all day" with migraines four days per week. (Tr. 763.) Botox injections were recommended to help. Less than two weeks later Plaintiff reported a "marked reduction in pain" and offered no similar complaints about her migraines. Later in 2019, after a lapse in insurance prevented doctor visits, Plaintiff reported that Botax "was previously very effective for chronic headaches, resulting in more than 20 days a month headache free, without any significant migraines." (Tr. 780.) She wanting to resume treatment with it once other medications were in place. The ALJ relied on this report in assessing Plaintiff's migraines.

Plaintiff's own narrative undermines her arguments regarding the severity of her migraines following treatment. She reported that Botax was very effective, and she did not have "any significant migraines." The record is void of work absences due to migraines. The ALJ's statement that Plaintiff "can go more than twenty to twenty five days without significant migraines" is not enough to overcome the evidentiary record. Moreover, Plaintiff conveniently ignores the language "more than" from the ALJ's statement. The phrase "more than" allows for a longer time of twenty to twenty five days in between migraines and undermines Plaintiff's alleged ten absences a year from work. In sum, the evidence does not support Plaintiff's position.

## RECOMMENDATION

Based upon the forgoing, the court RECOMMENDS that the district court AFFIRM the Commissioner's decision. The Commissioner's decision is supported by substantial evidence and free from legal error.

Copies of the foregoing Report and Recommendation are being sent to all parties who are hereby notified of their right to object. Within **fourteen (14) days** of being served with a copy, any party may serve and file written objections. *See* 28 U.S.C. §636(b)(1); Fed. R. Civ. P. 72(b). Failure to object may constitute a waiver of objections upon subsequent review.

DATED this 29 August 2022.

_____
Dustin B. Pead
United States Magistrate Judge