THE UNITED STATES DISTRICT COURT
DISTRICT OF UTAH

| | |
|---|---|
| NATALIE L.,<br><br>    Plaintiff,<br><br>v.<br><br>KILOLO KIJAKAZI, Acting Commissioner of the Social Security Administration,<br><br>    Defendant. | **ORDER**<br>- **ADOPTING [42] REPORT AND RECOMMENDATION**<br>- **OVERRULING [43] PLAINTIFF'S OBJECTION TO REPORT AND RECOMMENDATION**<br><br>Case No. 2:20-cv-00180-DBB-DBP<br><br>District Judge David Barlow |

Before the court is Chief Magistrate Judge Dustin B. Pead's Report and Recommendation reviewing the decision of Kilolo Kijakazi, Acting Commissioner of the Social Security Administration ("SSA") to deny disability benefits to Plaintiff Natalie L.[1] Judge Pead recommends that this court affirm the SSA's denial.[2] For the reasons below, the court adopts the Report and Recommendation, overrules Natalie L.'s Objection, and affirms the SSA's denial of benefits because the SSA's decision was supported by substantial evidence and applied the correct legal standard.

## BACKGROUND

Natalie L. applied for disability and insurance benefits in June 2017.[3] She claimed that she had been unable to work since August 18, 2014 due to multiple sclerosis, depression, and

---

[1] R. & R., ECF No. 42, filed Aug. 30, 2022. For privacy, the court refers to Plaintiff by her first name and last initial.
[2] *Id.* at 8.
[3] Administrative Record ("AR") 20.

anxiety.[4] The SSA denied her claim in October 2017 and denied her request for reconsideration two months later.[5] Natalie L. asked for a hearing before an Administrative Law Judge ("ALJ").[6]

In March 2019, the ALJ issued his decision[7] after using the SSA's five-step evaluation process.[8] In this process, an ALJ considers whether: (1) the claimant engages in substantial gainful activity; (2) the claimant has a severe, medically determinable physical or mental impairment; (3) the impairment is equivalent to one listed in the appendix of the relevant disability regulation and the impairment precludes substantial gainful activity; (4) the claimant has a residual functional capacity to perform past relevant work; and (5) the claimant has a residual functional capacity to perform other work considering the claimant's age, education, and work experience.[9]

In the first step, the ALJ credited Natalie L.'s claim that she had not worked since August 18, 2014.[10] For the second step, the ALJ found that she had several "severe impairments: multiple sclerosis, degenerative disc disease of the cervical spine, migraines, depressive disorder, anxiety disorder, [and] sleep disorder."[11] After considering the medical record, the ALJ determined in the third step that she did not have "an impairment or combination of impairments that me[t] or medically equal[ed] the severity of one of the listed impairments."[12] The ALJ rated Natalie L.'s mental limitations as follows: "moderate limitation understanding, remembering,

---

[4] AR 162, 247.
[5] AR 162–65; AR 166–67.
[6] AR 181–82.
[7] AR 30, 38.
[8] AR 22–29; *see* 20 C.F.R. § 404.1520(a); *Wall v. Astrue*, 561 F.3d 1048, 1051–52 (10th Cir. 2009) (reviewing the five-step process).
[9] 20 C.F.R. § 404.1520(a)(4); *see id.* § 416.920(a)(4).
[10] AR 22.
[11] AR 23.
[12] AR 23; *see* 20 C.F.R. § 404.1520(c).

and applying information; no limitation interacting with others; moderate limitation in maintaining concentration, persistence, or maintaining pace; and mild limitation in adapting or managing oneself."[13]

In the fourth step, the ALJ considered Natalie L.'s residual functional capacity and past relevant work.[14] If she could still perform the same level of work, she would not be disabled. The ALJ evaluated her symptoms, the extent to which the symptoms were consistent with medical evidence, the medical record, prior administrative medical findings, and Natalie L.'s testimony.[15] First, the ALJ found that she "retain[ed] the residual functional capacity to perform a range of light unskilled work."[16] As to mental capacity, the ALJ noted that state agency psychologists "consistently found that [she] suffers from moderate limitation in the ability to concentrate, persist, and maintain pace but no more than mild psychological limitations in other areas."[17] The ALJ indicated that she "can only make simple work-related judgments and decisions and understand, remember, and carry out only short and simple instructions."[18] Finally, the ALJ concluded that Natalie L. "suffers from migraine headaches but Botox treatment is very effective in controlling her symptoms. She can go more than twenty to twenty[-]five days without significant migraines."[19] The ALJ found that Natalie L. could not continue her past jobs as warehouse worker, data entry clerk, or reception clerk.[20]

---

[13] AR 24–25.
[14] 20 C.F.R. § 404.1520(a)(4)(iv).
[15] *See* AR 25–26.
[16] AR 28.
[17] AR 28 (citing state agency psychological consultants' opinions and stating that they were consistent with another physician's findings).
[18] AR 25.
[19] AR 27.
[20] AR 28–29.

The ALJ considered in the last step Natalie L.'s "residual functional capacity and [her] age, education, and work experience to see if [she] c[ould] make an adjustment to other work."[21] Given the previous findings, the ALJ reasoned that she could be a clerical assistant or router clerk.[22] Thus, the ALJ concluded that Natalie L. was not disabled.[23]

The SSA Appeals Council denied Natalie L.'s request for review in February 2020,[24] and the ALJ's decision became final for purposes of this appeal.[25] Natalie L. sought review of the ALJ's decision in this court. She contended that the ALJ erred by not adequately discussing her mental limitations and that the ALJ failed to account for absenteeism due to her migraines.[26] After reviewing the briefing and relevant law, Judge Pead recommended that the court affirm the SSA's decision because it was supported by substantial evidence in the record and there was no error.[27] Natalie L. filed a timely objection.[28]

## STANDARD OF REVIEW

### I. District Court Review

When resolving objections to a Report and Recommendation, the district court judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."[29] The judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."[30]

---

[21] 20 C.F.R. § 404.1520(a)(4)(v).
[22] *Id.*
[23] AR 29–30.
[24] AR 8.
[25] *See Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003); 20 C.F.R. § 404.918.
[26] Pl. Opening Br. 4, ECF No. 34, filed Nov. 10, 2020.
[27] R. & R. 8.
[28] Obj. to R. & R. ("Objection"), ECF No. 43, filed Sept. 13, 2022.
[29] 28 U.S.C. § 636(b)(1)(C).
[30] *Id.*

## II. Disability Determination

"The standard of review in a Social Security appeal is whether the [SSA]'s final decision is supported by substantial evidence, and whether [the SSA] applied the correct legal standards."[31] "Substantial evidence is more than a mere scintilla and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[32] While the "threshold for . . . evidentiary sufficiency is not high,"[33] "[e]vidence is not substantial if it is overwhelmed by other evidence in the record or constitutes mere conclusion."[34]

To determine whether the SSA met this standard, the court "meticulously examine[s] the record as a whole, including anything that may undercut or detract from the ALJ's findings."[35] An "ALJ need not specifically address every piece of evidence, but must provide a 'logical bridge' between the evidence and his conclusions."[36] In conducting this review, the court is "mindful that [it] may neither reweigh evidence nor substitute . . . judgment for the [SSA]'s."[37] "Although the evidence may also have supported contrary findings, '[the court] may not displace the agency's choice between two fairly conflicting views.'"[38]

---

[31] *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005) (citing *Hamilton v. Sec'y of Health & Human Servs.*, 961 F.2d 1495, 1497–98 (10th Cir. 1992)); 42 U.S.C. § 405(g) ("The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive . . . [and] the court shall review only the question of conformity with such regulations and the validity of such regulations.").
[32] *Grogan*, 399 F.3d at 1261 (citing *Glass v. Shalala*, 43 F.3d 1392, 1395 (10th Cir. 1994)).
[33] *Trujillo v. Comm'r*, 818 F. App'x 835, 839 (10th Cir. 2020) (unpublished) (quoting *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019)).
[34] *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).
[35] *Grogan*, 399 F.3d at 1262 (quoting *Washington v. Shalala*, 37 F.3d 1437, 1439 (10th Cir. 1994)).
[36] *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015).
[37] *Trujillo*, 818 F. App'x at 839 (citing *Hendron v. Colvin*, 767 F.3d 951, 954 (10th Cir. 2014)); *Oldham v. Astrue*, 509 F.3d 1254, 1257 (10th Cir. 2007) ("We review only the *sufficiency* of the evidence, not its weight." (citing *Lax v. Astrue*, 489 F.3d 1080, 1084 (10th Cir. 2007))).
[38] *Oldham*, 509 F.3d at 1257–58 (quoting *Lax*, 489 F.3d at 1084).

# DISCUSSION

Natalie L. objects to the Report and Recommendation for two reasons. She first argues that the ALJ erred by not adequately addressing her limitations in concentration, persistence, or pace ("CPP"). Next, she argues that the ALJ did not account for absences caused by migraines in her residual functional capacity. The court addresses each argument in order.

## I. The ALJ Did Not Err Because Substantial Evidence Supported the ALJ's Finding on Residual Functional Capacity.

Natalie L. contends that the ALJ erred by violating the SSA's Program Operations Manual System ("POMS") instructions. Specifically, she argues that the ALJ did not describe Natalie L.'s limitations in CPP after state agency psychologists failed to properly denote her limitations in the narrative section of the Mental Residual Functional Capacity Assessments ("MRFCA").[39] The POMS instructions direct that should a physician mark that a person is "Moderately Limited" in Section I of the MFRCA form, the physician must describe the "degree and extent of the capacity or limitation" in Section III, the narrative section.[40] Within Section III, providers are instructed to document "conclusions of functional capacity" without relying on "nonspecific qualifying terms (e.g., moderate, moderately severe) to describe limitations."[41]

Natalie L. argues that the narratives were incomplete and so the ALJ had to address those limitations in residual functional capacity, particularly as to her "limitations in attention and concentration, attendance, [and] completing a normal workday or workweek and maintaining pace,"[42] without relying on the MRFCAs. If a "Section III narrative fails to describe the effect

---

[39] *See* POMS DI 25020.010.A.2.b.
[40] POMS DI 24510.063.B.2.
[41] POMS DI 24510.065.B.1.b–c.
[42] Objection 7 (citing *Weiderholt v. Barnhart*, 121 F. App'x 833, 839 (10th Cir. 2005) (unpublished)); *see* POMS DI 25020.010.B.3.

6

that each of the Section I moderate limitations would have on the claimants' ability, or if it contradicts limitations marked in Section I, the MRFCA cannot properly be considered part of the substantial evidence supporting an ALJ's [residual functional capacity] finding."[43] Natalie L. also contends that *Smith v. Colvin*[44]—cited in Judge Pead's Report and Recommendation—is distinguishable and that the two primary cases cited in *Smith* are inapposite. She argues that unlike *Lee v. Colvin*,[45] her MRFCA narratives did not account for limitations in CPP;[46] and unlike *Vigil v. Colvin*,[47] her limitations were not related to unskilled work.[48]

      The ALJ did not err for two reasons. First, Section III of the MRFCAs adequately discussed the Section I findings. One or more of the state agency psychologists noted in Section I under the "sustained concentration and persistence limitations" rating that Natalie L. was moderately limited in the "ability to maintain attention and concentration for extended periods"; moderately limited in the "ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances"; and moderately limited in the "ability to complete a normal workday and workweek without interruptions from psychologically[-]based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods."[49] The narrative sections offered relevant conclusions. First, Dr. Lynn Johnson stated that Natalie L.'s "pain and other s[ymptoms] fluctuate and trigger depression and worry. These will impact CPP."[50] Dr. Johnson also noted that "[w]hile she alleges memory problems,

---

[43] *Carver v. Colvin*, 600 F. App'x 616, 619 (10th Cir. 2015) (unpublished).
[44] 821 F.3d 1264 (10th Cir. 2016).
[45] 631 F. App'x 538 (10th Cir. 2015) (unpublished).
[46] *See* Objection 8–9.
[47] 805 F.3d 1199 (10th Cir. 2015).
[48] *See* Objection 8–9.
[49] *See* AR 110–11, 127–28, 143, 158.
[50] AR 143.

the present [exam] does not support that. [A physician] opined [that] her memory and concentration were normal . . . . She is appropriate for low stress work that can be learned in 1 [to] 3 months."[51] Dr. Lois Huebner found that "she did very well on memory testing and other aspects of cognitive assessment. . . . [She] appeared to be . . . working very hard at the memory tasks [but] . . . would have difficulty sustaining this type of energy in a 40[-]hour work week."[52] The psychologists concluded that Natalie L. had "moderate limitations to CPP"[53] or that she was "moderately impaired in CPP."[54]

Overall, the MFRCA narratives "adequately encapsulated the moderate adaptation limitations" found in Section I.[55] Thus, the narratives can be "considered part of the substantial evidence supporting [the] ALJ's [residual functional capacity] finding."[56] The ALJ did not "turn a blind eye to moderate Section I limitations."[57] Additionally, the ALJ did not rely solely on the MFRCAs. He also relied on findings from two mental status examinations performed by Dr. John Hardy, a licensed clinical psychologist.[58]

Second, the ALJ's findings are supported by the Tenth Circuit's holding in *Smith*. In *Smith*, a physician made several findings in Section I of the MRFCA as to the claimant's functional limitations.[59] Yet the ALJ did not refer specifically to the physician's conclusions. Instead, the ALJ said for residual functional capacity only that the claimant "could not engage in

---

[51] AR 144.
[52] AR 111.
[53] AR 111, 128.
[54] AR 144, 159.
[55] *Garcia v. Saul*, 509 F. Supp. 3d 1306, 1316 (D.N.M. 2020).
[56] *Barbara B. v. Kijakazi*, No. 1:21-cv-00094, 2022 WL 3644247, at *7 (D. Utah Aug. 24, 2022) (citing *Carver*, 600 F. App'x at 619).
[57] *Carver*, 600 F. App'x at 619. "The POMS *require* some description of the 'degree and extent' of any Section I limitation in the Section III narrative." *Garcia*, 509 F. Supp. 3d at 1315 (quoting POMS DI § 24510.063.B.2).
[58] *See* AR 26–28 (referencing Dr. Hardy's examinations at AR 689–93, 749–52).
[59] *Smith*, 821 F.3d at 1268.

8

face-to-face contact with the public" and "could engage in only simple, repetitive, and routine tasks."[60] The Tenth Circuit held that the ALJ's findings were enough to properly "incorporate[] the functional limitations of [the claimant]'s moderate nonexertional impairments."[61] "This approach [wa]s acceptable in [the Tenth Circuit]"[62] because an "administrative law judge can account for moderate limitations by limiting the claimant to particular kinds of work activity."[63]

      Here, the ALJ properly accounted for Natalie L.'s functional limitations as recorded in Sections I and III of the MFRCAs. He concluded that "[m]entally, she can only make simple work-related judgments and decisions and understand, remember, and carry out only short and simple instructions."[64] In support, the ALJ noted that she was "alleged[ly] suffering from poor memory and lack of ability to maintain concentration."[65] Additionally, the ALJ remarked that "state agency psychological consultants considering [her] case have consistently found that [she] suffers from moderate limitation in the ability to concentrate, persist, and maintain pace but no more than mild psychological limitations in other areas."[66] But the "mental status examinations and testing performed by Dr. Hardy do not show these deficits[,]" and "[g]iving [Natalie L.] the benefit of the doubt, [the ALJ] found [that] she can only make simple work-related judgments and decisions and understand, remember, and carry out only short and simple instructions."[67]

---

[60] *Id.* at 1269.
[61] *Id.*
[62] *Id.* (citing *Lee*, 631 F. App'x 538; *Vigil*, 805 F.3d 1199).
[63] *McDaniel v. Berryhill*, No. 16-226, 2017 WL 3052504, at *14 (D.N.M. July 12, 2017) (quoting *Smith*, 821 F.3d at 1269); *see also Mahboub v. Saul*, No. CV 19-1216, 2021 WL 2209888, at *13 (D.N.M. June 1, 2021) (reasoning that *Vigil* and *Smith* collectively stand for the same proposition).
[64] AR 25.
[65] AR 26.
[66] AR 28.
[67] AR 26.

It is true that the ALJ did not repeat the three limitations from Section I, but the ALJ did not have to do so.[68] He properly weighed and incorporated the state agency psychologists' conclusions denoted on the MRFCAs, particularly the moderate limitations in CPP, Dr. Hardy's mental status examinations, Natalie L's testimony, and the vocational expert's testimony. Ultimately, he concluded that Natalie L. could perform sufficient work-related activities as a clerical assistant or router clerk given her residual functional capacity.[69]

Natalie L.'s arguments that *Smith* is inapposite given *Lee* and *Vigil* are unpersuasive. First, in *Smith*, the Tenth Circuit cited *Lee* for the proposition that the ALJ did not have to "expressly incorporate" moderate limitations into the residual functional capacity.[70] The ALJ in *Lee* incorporated the relevant limitations by finding that the plaintiff was "limited to simple tasks and work requiring only routine supervision or only superficial interaction with supervisors and peers."[71] Second, *Smith* cited *Vigil* for the same proposition—that an ALJ can "account for moderate limitations by limiting the claimant to particular kinds of work activity."[72] As the court in *Vigil* explained, an ALJ properly accounted for a claimant's moderate CPP issues by limiting him to unskilled work.[73] Here, the ALJ's findings as to Natalie L.'s ability to do skilled work are likewise proper: "an individual with [her] residual functional capacity would be unable to perform any of the claimant's past relevant work. I concur in this opinion noting that the jobs of

---

[68] The ALJ "need not 'parrot' a consultant's 'exact description of limitations' so long as the ALJ's [residual functional capacity] reflects the consultant's 'overall assessment.'" *Mahboub*, 2021 WL 2209888, at *13 (quoting *Chavez v. Colvin*, 654 F. App'x 374, 375 (10th Cir. 2016) (unpublished)); *see Smith*, 821 F.3d at 1269 n.2 ("[W]e compare the administrative law judge's findings to the [physician]'s opinion on residual functional capacity, not [the physician]'s notations of moderate limitations.").
[69] AR 29.
[70] *Smith*, 821 F.3d at 1269.
[71] *Id.* (citing *Lee*, 631 F. App'x at 541–42).
[72] *Id.* (citing *Vigil*, 805 F.3d at 1204).
[73] *Vigil*, 805 F.3d at 1204.

data entry clerk and reception clerk are too skilled . . . .";[74] "[she] retains the residual functional capacity to perform a range of light unskilled work."[75] Given the additional "evidence in the record regarding [her] mental status," the "ALJ's [residual functional capacity] determination that limit[ed her] to perform" unskilled light occupational base jobs such as clerical assistant and router clerk was apt.[76]

In sum, the ALJ did not err. He gave a sufficient rationale for the "no disability" determination that was supported by substantial evidence.

II.   **The ALJ Properly Accounted for Natalie L.'s Migraines.**

Natalie L. argues that the ALJ erred when he ignored possible absenteeism due to chronic migraine headaches. She admits that the ALJ asked the vocational expert the effect of three or more absences on her ability to maintain competitive employment and found that Natalie L. could go more than twenty to twenty-five days without significant migraines.[77] However, she contends that the ALJ erred by not asking the expert about the effect of up to fourteen absences per year, a hypothetical number of absences postulated by counsel.[78]

The record supports the ALJ's finding that Natalie L. could "go more than twenty to twenty[-]five days without significant migraines."[79] In January 2015, a neuro-ophthalmology exam revealed that Natalie L. had less than five migraines since 2000 and suffered from localized headaches with eye pain, stress headaches, and headaches with pain near the skull.[80]

---

[74] AR 28.
[75] AR 28.
[76] *Vigil*, 805 F.3d at 1204; *see* AR 29.
[77] Objection 10; AR 27; *see* AR 91.
[78] *See* Objection 10.
[79] AR 27.
[80] AR 461.

Two years later, she complained of chronic daily headaches and migraines four days a week.[81] After receiving Botox injections, physicians reported "a marked reduction in pain"[82] and a "dramatic response . . . resulting in more than 20 days a month headache free without any significant migraines."[83] In a follow-up neurological consultation, a physician noted that she experienced "more than 25 days a month headache free until Botox started to wear off" with "no migraines until recently."[84] Additionally, Natalie L. does not identify any record evidence that her migraines would lead to absenteeism.

Natalie L. further contends that the magistrate judge violated the Supreme Court's prohibition on post-hoc agency arguments.[85] She argues that the judge "delve[d] into the record and cite[d] findings independently deduced, but not provided by the ALJ."[86] The argument is meritless. The magistrate judge did not adopt any post-hoc rationales. He reviewed the ALJ's decision under a de novo standard[87] and concluded that the ALJ relied on the record to find that Natalie L. could go more than twenty-five days without severe migraines.[88] He did not substitute his judgment for that of the ALJ or provide new justifications.

Conversely, the hypothetical absentee number generated by Plaintiff's counsel is not supported by the record. Even if Natalie L. experienced the number of migraine headaches assumed by counsel, the record does not reflect that each headache would result in an absence,

---

[81] AR 763.
[82] AR 760.
[83] AR 759, 780.
[84] AR 761.
[85] Objection 11 (citing *SEC v. Chenery*, 318 U.S. 80, 92 (1943)); *see Dep't of Homeland Sec. v. Regents of the Univ. of Cal.*, 140 S. Ct. 1891, 1907–08 (2020) ("It is a foundational principle of administrative law that judicial review of agency action is limited to the grounds that the agency invoked when it took the action." (cleaned up)).
[86] Objection 11.
[87] *See Grogan*, 399 F.3d at 1262.
[88] AR 27; *see* AR 461, 759–61, 763, 780.

especially with the Botox treatments. Indeed, Natalie L. has not provided any record cite that would require or likely even permit a finding that she necessarily would be absent ten to fourteen days per year.

In sum, the record shows that the ALJ adequately accounted for absenteeism in residual functional capacity. And the magistrate judge did not make any new findings, but instead appropriately reviewed and addressed Natalie L.'s arguments. Substantial evidence supported the ALJ's decision and there was no error.

## ORDER

Accordingly, the court ADOPTS the Report and Recommendation affirming the SSA's decision.[89] Plaintiff's Objection to the Report and Recommendation is OVERRULED.

Signed September 28, 2022.

BY THE COURT

_____
David Barlow
United States District Judge

---

[89] ECF No. 42.